CASE 98—PETITION EQUITY—MAY 12.

# Calvert v. Rice.

### APPEAL FROM MASON CIRCUIT COURT.

1. A LIFE TENANT MAY TAKE TIMBER FROM THE LAND TO KEEP FENCES AND BUILDINGS IN REPAIR, provided he does not cut trees which are not suited for the purpose, or otherwise abuse the right; and the fact that the timber is scarce, or that even the judicious use of it may lessen the value of the estate, does not deprive the life tenant of this right.

2. WASTE.—The cutting by a life tenant of trees left in the yard for ornamental purposes is waste.

COCHRAN & SON, EDWARD W. HINES FOR APPELLANT.

1. The life tenant is entitled to take timber for repairs. (Kerr's Injunctions in Equity, page 63; 1 Washb. on Real Property (5th ed.), pages 134-135; Wood's Landlord and Tenant, sec. 251; Loudon v. Warfield, 5 J. J. Mar., 196; Loomis v. Wilbur, 5 Mason, 13.)

2. The taking of timber by the life tenant is not waste unless more is taken than is necessary for repairs, or timber is taken which is not fit for that purpose. (Kerr's Injunctions in Equity, 2d ed., page 63; 1 Washb. on Real Property (5th ed.), page 135.)

   The last tree may be taken if necessary. (Findlay v. Smith, 6 Munf., 134; s. c., 8 Am. Dec, 741.)

3. The trees must have been planted for shade or ornament, or left standing for that purpose, in order to protect them as shade or ornamental trees. (1 High on Injunctions, secs. 681-682; Kerr's Injunctions in Equity (2d ed.), pages 93-97.)

   The tenant may thin out ornamental trees without being liable as for waste. (1 High on Injunctions, sec. 681.)

4. Even if the life tenant has committed waste in the past, that alone will not justify the court in assuming that he will do so in the future if not enjoined. (Crockett v. Crockett, 2 Ohio St., 180.)

T. C. CAMPBELL OF COUNSEL ON SAME SIDE.

WALL & WOTHINGTON FOR APPELLEE.

1. A tenant for years is entitled to the same estovers that a tenant for life may have. (Coke on Littleton, 41b.; Wood on Landlord and Tenant sec. 251; Bouvier's Law Dictionary, title " Estovers.")

2. Estovers must be reasonable. Under the pretense of estovers the tenant must not destroy the timber, nor do any other permanent injury to ·

the inheritance. (2 Blackstone, 35; Kent's Commentaries, volume 4, page 78.)

3. Whether cutting any particular kind of trees for fuel or fencing is waste depends upon the situation and circumstances and the custom of the county. (Webster v. Webster, 66 Am. Dec., 705; 1 Washburne on Real Property, 141; 1 Addison on Torts, 284, note *a;* Woodward v. Gates, 38 Ga., 205.)

4. A tenant for life may, because he acts maliciously, be enjoined from doing what otherwise he would have a legal right to do. (1 High on Injunctions, sec. 680.)

5. The cutting of trees that are for the ornament of the messuage may be enjoined on the ground of equitable waste. (1 High on Injunctions, sec. 681.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This is a controversy between the appellants, who are the life tenants, and the appellees, who own the inheritance, and are entitled to the possession when the tenancy expires. It is a petition in equity, with an injunction to stay waste. W. H. Duvall owned at his death a tract of three hundred and twenty-five acres of land lying on the Maysville and Mt. Sterling Turnpike, in the county of Mason. At his death seventy-five acres of this tract, including the dwelling, was allotted to his widow as her dower. She subsequently married the appellant, Jesse Calvert, who has been cutting the timber on the dower land, and converting it into rails for the use of the dower tract. The first husband, Duvall, left one child surviving him, who married the appellee, Rice, and they instituted this action, asking that the appellants be enjoined from cutting any trees on the dower and from committing waste.

The testimony is conflicting as to the number of trees cut and used on the premises by the appellants in repairing the buildings and the fencing. The ap-

pellant admits the cutting about fifteen trees, and the appellees say that he cut at least twenty. The main contention arises from the scarcity of timber on the entire farm, it appearing that all the timber is on the dower tract, and covers only about ten or twelve acres of the dower land, and some of that timber is in the yard. It appears that only one tree was cut that was standing in the yard, and that seems to have been decayed, and in such close proximity to the dwelling as subjected it to danger if the tree should fall.

If this case is to be determined upon the idea that there is not a sufficiency of timber on the dower to keep in repair the entire tract, then the injunction ought to go, for it is evident that there is not more than a sufficiency of timber to keep up and continue in permanent repair the dower tract. The scarcity of timber, however, does not prevent its use by the life tenant in repairing the buildings and fencing on the premises. It only requires that he should be the more careful in its use, and only cut so much as would be used by a prudent man when in possession and the owner of the fee, and necessary to keep the premises in repair. It is the duty of the life tenant not to permit the premises to go to destruction for the want of repairs, and particularly when there is timber on the place from which the repairs may be made. It is better for those in remainder that the life tenant should keep the premises in repair, so that when the term expires the owner of the fee receives it in good condition, than to be compelled to receive it as a ruined and dilapidated farm. There is no

doctrine better settled than that of the right of the
tenant for life to take reasonable estovers from the
estate, but not to such an extent as to work an in-
jury to the inheritance ; and what is meant by this
injury is, that the tenant shall not make an unrea-
sonable use of this right.   The right to timber for
fire-wood and repairing buildings is an incident to
every life estate to be used for such purposes when
on the land.   The tenant has no right to cut and
use rail timber for fire-wood when there is other
timber that might be used for that purpose, or to
even cut and use young and growing timber that
would not make more than four or five rails to the
cut for fencing purposes.   This would be an unrea-
sonable use of it.   The proper use of the timber by
the tenant, as is said in the text-books and reported
cases, "is to give the tenant necessary fuel that he
may remain on the premises, and sufficient timber to
keep the fences and buildings in repair."   (2 Black.
Com.; Padelford v. Padelford, 7 Pick., 152; Miles v.
Miles, 32 N. H., 147 ; same case, 64 Amer. Dec., 362.)

Why is it not to the advantage of the remainder-
man that the premises should be kept in repair ?  It
is not required or expected of the tenant that he shall
expend his money in buying plank or lumber to im-
prove fences and keep the premises in repair, so that
the timber may pass from him to the inheritance un-
touched, although its judicious use may lessen the
value of the estate.   The owner of the fee would use
this timber if without means to purchase other ma-
terial, and so would any prudent farmer.   He would
not cut the timber in the yard left for ornamental

purposes, nor could the tenant, without being guilty of waste; but ordinary woodland _can be used in a prudent manner for the use of the premises, and that use or the right to use the timber not having been abused by the tenant, we see no reason for an injunction, the effect of which would be to enrich the inheritance at the expense of the life tenant.

The judgment is, therefore, reversed, with directions to dismiss the petition.