## SMITH *v.* SMITH *et al.*

1. The provisions of section 4927 of the Civil Code, which require the
   plaintiff, in an application for an injunction to prevent the cutting
   of timber, to attach to his petition an abstract of his title and give
   a bond for damages when the restraining order is granted, are not
   applicable in a case where the plaintiff alleges and proves the
   insolvency of the defendant.
2. While a widow who has taken a homestead in the land of her
   deceased husband is entitled to a reasonable and proper use thereof
   and of the timber thereon for the benefit of herself and the other
   beneficiaries of the homestead, she can not, as against the rights
   of those who will be entitled to the property in reversion after the
   homestead estate shall have expired, make a sale of the standing
   timber on the land, when it appears that the same will injure the
   value of the freehold, and is not essential to a legitimate use of the
   property for homestead purposes. In such a case the reversioners
   may maintain against the widow's grantee an equitable petition to
   restrain waste of this character.
3. There was no error in overruling the demurrer to the petition, nor
   in granting the injunction.

Argued June 21, — Decided July 22, 1898.

Petition for injunction, etc. Before Judge Harris. Heard
county. February 7, 1898.

On December 10, 1897, plaintiffs brought their petition for
an injunction to prevent J. D. Smith et al. from cutting or re-
moving timber from a lot of land, from sawing it into lumber,
from disposing of lumber in the possession or control of the de-
fendants which had been sawn from timber cut thereon, and

from collecting money for such of the lumber as had been sold; and for the appointment of a receiver to take charge of the same. It was alleged, that the petitioners owned a ten-twelfths undivided interest in the land, as shown by deeds copies of which were attached to the petition; that two other named persons, who each owned an undivided twelfth-interest in it, refused to interfere with the defendants; that on September 15, 1897, the defendants, over the objection of the petitioners, entered upon the land and began to cut the timber from it, and moved a sawmill near the line of the land and began to haul the timber to the mill and saw it into lumber and dispose of it, and they continue to do so, and refuse to allow the plaintiffs to exercise any control over the premises; that there is upon the land a large quantity of lumber sawn from timber cut from the land, and which is being offered for sale by the defendants, and a portion of which has been sold, but is yet undelivered; that the defendants are threatening to cut and dispose of the rest of the growing timber; and that they are insolvent and unable to respond to any judgment for damages that may be obtained against them. Defendants demurred on the following grounds: (1) No equity in the petition; (2) it does not set out any consideration for the copy deeds attached to the petition; (3) the originals of the deeds were not exhibited to the judge before he signed the restraining order; (4) no bond for damages accompanies the petition. J. D. Smith answered, that the land was included in a homestead set apart to the widow of Enoch Smith, as the head of a family consisting of herself and several children, which homestead still exists, Mrs. Smith now residing on the land with two dependent unmarried daughters, and exercising full control over it; that the deeds under which the plaintiffs claim title were made after the setting apart of the homestead, and without any order of court authorizing the same, and were without consideration and illegal and void, and the only interest plaintiffs have in the land is their interest, as children of Enoch Smith, in the reversion after the expiration of the homestead; that the timber was cut by the consent and authority of Mrs. Smith, the widow, for the purpose of making repairs and improvements on the homestead property

and of paying for supplies furnished for the beneficiaries, and in order to clear the land for cultivation, this being necessary because the rest of the land had become so worn by use that a support for the family could not be made from it; and that defendant was cutting the timber under a contract with Mrs. Smith, by which he was to have a certain proportion of the lumber sawed, and she the remainder. He denied that the acts complained of were done over the objection of the plaintiffs, etc. The court overruled the demurrer, granted the injunction, and appointed a receiver.

*Reese & Gordon, W. D. Hamrick* and *Talbot Smith,* for plaintiff in error.

*T. B. Davis, Whitaker & Bingham* and *F. N. Cobb,* contra.

LITTLE, J. 1. Prior to the enactment of the provisions of law now codified in section 4927 of the Civil Code, the established rule in this State was, that equity would not interfere to restrain a trespass, unless the injury was irreparable in damages or the trespasser was insolvent, or there existed other circumstances which, in the discretion of the court, rendered the interposition of the writ necessary and proper, among which circumstances was to be considered the avoidance of circuity and multiplicity of actions. Civil Code, § 4916. In the case of *Powell* v. *Cheshire,* 70 *Ga.* 357, where a bill was filed to enjoin a trespass upon realty by felling timber, it was held that: "To give equity jurisdiction, the injury must be irreparable in damages, or the trespasser be insolvent, or other circumstances (such as the avoidance of circuity and multiplicity of actions) must exist, rendering the interposition of a court of equity necessary." To same effect, see *Strickland* v. *Griffin,* 70 *Ga.* 541; *Cottle* v. *Harold, Johnson & Co.,* 72 *Ga.* 830; *Lingo* v. *Harris,* 74 *Ga.* 368. Where such facts or circumstances, however, exist, the plaintiff is not required to show a perfect title, but a prima facie title is all that is necessary, at least until a better outstanding title is shown. *McArthur* v. *Matthewson,* 67 *Ga.* 143. The rule embraced in the code section above referred to, and applied in the aforementioned authorities, while modified, with respect to a given class of trespassers, by section 4927 of

the Civil Code, is not repealed by the latter, but the two embrace concurrent and subsisting rules of law. By said section 4927, it is provided that: "In all applications to enjoin the cutting of timber for sawmill purposes and railroad-ties and bridge-timbers for railroad purposes, or to enjoin the cutting of timber or boxing or otherwise working the same for turpentine purposes, it shall not be necessary to aver or prove insolvency, or that the damages will be irreparable; provided, the petitioner has perfect title to the land upon which the timber is situated, and shall attach an abstract of his title, stating name of grantor and grantee, date, consideration and description of property, names of witnesses, when and where recorded, to his petition, and produce the original titles before the judge; and provided, that the judge granting said temporary restraining order shall require the petitioner to give such bond as in his discretion he may deem proper, to be approved by the clerk of the superior court, to answer the damages, if any, which may be sustained by the defendant by reason of the granting of said injunction; and if, on the final hearing of the cause, damages against the petitioner are proven, judgment shall be entered against the sureties on said bond as in appeal cases." It will be seen from the provisions of these two sections of the code, that under section 4916 an injunction may be granted to restrain a trespass of any character, where the injury is irreparable in damages, or the trespasser is insolvent, and that under such circumstances the complainant is not required to give a bond as a condition precedent to the issuance of the writ; whereas under section 4927 the complainant need not allege insolvency or that the damages will be irreparable, but the writ may be issued to restrain trespasses of the particular character prescribed in that section, provided the petitioner has perfect title to the land, and gives the bond as required by the section, and otherwise complies with the conditions of such section. Even with respect to the particular trespasses therein enumerated, if the complainant shall allege and prove insolvency, or that the damages are irreparable, then the provisions of section 4927 would not be applicable, but the complainant's rights would be governed by the provisions of section 4916, under which he is neither required to give bond, nor in

the first instance show perfect title, nor attach an abstract of such title to his petition.

2. The ruling made in the second headnote requires but little elaboration. It is provided by section 3090 of the Civil Code, which must, as far as applicable, govern the rights of the beneficiaries of a homestead, that: "The tenant for life is entitled to the full use and enjoyment of the property, so that in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion," etc. Section 2846 of the Civil Code, with reference to the vesting of property set apart as a homestead, provides: "Property set apart for a wife or for a wife and minor children, or for minor children alone, shall, upon the death of the wife or her marriage, when set apart to her alone, and upon majority of the minor children or their marriage during minority, when set apart for minor children, and upon the death or marriage of the wife and majority or marriage of the minor children, when set apart to wife and minor children, revert to the estate from which it was set apart," etc. The beneficiaries of the homestead estate, therefore, not being entitled to commit waste as against those who are entitled to the property in reversion, it remains only to inquire whether a widow who has taken a homestead in the land of her deceased husband is entitled, as against such reversioners, to make a sale of the standing timber on the land, which will injure the value of the freehold, when it appears that the sale of such timber is not essential to a legitimate use of the property for homestead purposes.

Timber growing on land is a part and parcel of the realty. *Pritchett* v. *Davis,* 101 *Ga.* 236. It is a part of the inheritance. 28 Am. & Eng. Enc. L. 870. And while a tenant for life or years is entitled, of common right, to take prudently sufficient estovers, unless restrained by contract, or to take timber for reasonable repairs (Gower *v.* Eyre, Coop. 160; Alexander *v.* Fisher, 7 Ala. 514; Calvert *v.* Rice, 91 Ky. 533), yet such tenant has no right to sell the timber, where such sale is not an incident to the reasonable enjoyment of his estate. In Davis *v.* Gilliam, 5 Ired. Eq. (N. C.) 308, the court said: "We should

hold, as the state of the country now is, that a tenant for life of land entirely wild, might clear as much of it for cultivation as a prudent owner of the fee would, and might sell the timber that grew on that part of the land. Clearing for cultivation has, according to the decisions, peculiar claims for protection, and a sale of the timber from the field cleared may be justly made in compensation for clearing and bringing it into cultivation. But it seems altogether unjust that a particular tenant should take off the timber without any adequate compensation to the estate for the loss of it. For he takes in that case, not the product of the estate arising in his own time, but he takes that which nature has been elaborating through ages, being a part of the inheritance itself, and that too which imparts to it its chief value." In the case of Davis v. Clark, 40 Mo. App. 515, the principle is applied, that cutting timber for the purpose of cultivation (if it does not lessen the value of the inheritance) is a privilege following a tenancy for life, when it is necessary for the proper and reasonable enjoyment of the estate and as long as the tenant only acts in so doing in conformity to good husbandry, regard being had to the situation of the country and the comparative value of the timber. But this is a privilege which can only be exercised for the purpose mentioned, that is, the proper and reasonable enjoyment of the estate. Therefore cutting and destroying timber, not for firewood, repairs to the premises or for cultivation, but for the purpose of converting it into railroad-ties for the market, will constitute waste for which the defendant will be liable. See also Webster v. Peel, 97 Mich. 327; Weatherby v. Wood, 29 How. Pr. (N. Y.) 404; Brashear v. Macey, 3 J. J. Marsh. (Ky.) 93. It is committing waste for a tenant for life to sell and authorize the cutting and removal of valuable timber trees growing on the land. Modlin v. Kennedy, 53 Ind. 267. See generally 28 Am. & Eng. Enc. L. 870 et seq., and authorities cited.

3. It follows from what has been before said, that the action of the judge below in overruling the demurrer to the petition was in accordance with the law applicable to the case; and the judgment is          *Affirmed. All the Justices concurring.*