## WELLS *v.* ROUNTREE & COMPANY *et al.*

1. Where several parties are asserting conflicting rights in the same property, and two seek an injunction against one to prevent the exercise of acts of ownership resulting in irreparable injury, and to avoid a multiplicity of suits; and where the latter in turn asks for an injunction against one of the others, to restrain acts tending to irreparable injury; and the court finds that the status should be preserved, and grants an injunction, but allows one of the parties to dissolve the same by giving bond: *Held*, that the order should be so modified as to strike the permission to give a bond and make the restraining order absolute against both.

2. Where the court finds that the status should be preserved, and orders an injunction accordingly, neither party should be allowed to change the status by giving a bond.

3. Where, under the Civil Code, § 4916, a trespass is enjoined in order to prevent circuity of actions and a multiplicity of suits, all parties to the circle of actions should be enjoined, and not one only.

Argued June 9, — Decided June 27, 1903.

Injunction.    Before Judge Littlejohn.    Dooly superior court. April 25, 1903.

This was a triangular contest for injunctions.    Wells claimed the land with all thereon; Rountree & Co. claimed the sawmill timber; Peacock & Kelly claimed the turpentine privileges.    Rountree & Company began the litigation, asking for an injunction to prevent Wells from cutting the sawmill timber.    Wells answered, setting up his title; denied any right in Rountree & Company to an injunction; insisted that Peacock & Kelly, under an invalid assignment from Rountree & Co., were boxing the timber for turpentine purposes; and thereupon prayed that the latter firm be made parties defendant, and that the court would enjoin them from continuing their operations.    It appeared that Harrold & Johnson, on October 3, 1899, in consideration of cash, and notes maturing one, two, and three years thereafter, aggregating $7,290, granted

to S. J. Hill & Brother the right to cut the timber for one year, with the privilege of continuing the same from year to year, on paying the deferred notes, this right to cease if they failed to meet any note at maturity, agreeing, when all were paid, to make a deed to the land. S. J. Hill & Brother entered, and shortly thereafter, on December 14, 1899, transferred to Wells all their interest in this land, but reserved the right to cut the timber thereon for ten years. On November 12, 1900, S. J. Hill individually sold the timber rights to Rountree & Company. Subsequently S. J. Hill & Brother, being unable to meet the purchase-money notes, transferred the bond for titles to Wells, and directed Harrold & Johnson to make him a deed upon the payment of their debt. Wells having complied with this condition, Harrold & Johnson made him a deed to the property in usual form. In their petition Rountree & Company claimed, that, before buying the timber rights from S. J. Hill, they notified Wells of their intention to purchase ; that he pointed out the timber, and told them that the title to the land was perfect, and that Hill & Brother owed one note, but would pay the same out of the money to be received from them in case they bought. They also claimed that the transfer of the bond for titles from S. J. Hill & Brother to Wells, and the deed in pursuance thereof from Harrold & Johnson, was intended as a security for the amount Wells advanced for the benefit of S. J. Hill & Brother; that Rountree & Company were conducting a sawmill, and were relying on the timber on this property for the operation of the same; that if Wells was allowed to cut the timber, they would be irreparably damaged in the loss of the timber, and in the destruction of their sawmill business, besides which there would be a multiplicity of suits, inasmuch as Peacock & Kelly would sue Rountree & Company on their warranty, who in turn would have a cause of action against S. J. Hill on the warranty contained in his deed, or against Wells for his trespass. They further claimed, that even if S. J. Hill & Brother were in default on their indebtedness to Harrold & Johnson, all interest in the land was not thereby forfeited, even though so stipulated in the bond for titles, and that when they purchased on November 12, 1900, they acquired an equity in the land, which was preserved when Wells paid the balance of the purchase-money, and that by such payment he did not acquire title to the timber, but only held it for reimbursement.

Wells denied the material allegations set up by Rountree & Company. He averred that Hill & Brother had lost all interest in the land; and that when he purchased he acquired the title to land and timber alike. He admitted that he had pointed out the land to Rountree & Company, but long before Hill & Brother were in default, or before he had bought from them. He denied that Rountree & Company were conducting a sawmill, or that their damages would be irreparable; and by supplemental petition alleged that Peacock & Kelly, assignees of Rountree & Company, were trespassing upon the land and boxing the timber for turpentine purposes, using trees too small for that purpose, and doing irreparable injury. Peacock & Kelly, without objection, were made parties. They answered Wells's cross-bill; claimed that they had lawful authority under Rountree & Company to conduct the turpentine business; and averred that they were doing so in a proper manner, and had placed a turpentine still on or near the land; and that the business of the still would be broken up and they irreparably damaged if the injunction was granted. On the hearing the judge passed an order that the present status of the property in dispute should be maintained until the issues could be properly passed upon; enjoined Wells from interfering with the sawmill timber; and further enjoined Peacock & Kelly from boxing trees and using the same for turpentine purposes, provided that the injunction should not take effect against Peacock & Kelly if they would give bond to pay Wells such damages as he might recover by reason of the use of the timber by them.

*Crum & Jones*, for plaintiff in error.
*Whipple & McKenzie*, contra.

LAMAR, J. (after stating the foregoing facts.) If the finding of the court that the status should be maintained and that Wells was entitled to an injunction against Peacock & Kelly was a finding that solvent defendants were committing irreparable damage, it was as much as to say that the damages could not be computed, or compensated in money; and therefore they should not have been allowed to discharge the effect of that finding by giving a bond. An injunction against irreparable damages necessarily implies that a bond or solvency is not good cause for allowing the trespass to continue. *Woodall* v. *Cartersville Min. Co.*, 104 *Ga.* 156. If, on the

other hand, the finding of the judge that Wells was entitled to an injunction against Peacock & Kelly was on the theory that it was necessary to avoid a circuity of actions (Civil Code, § 4916), it likewise follows that a bond ought not to have been allowed to dissolve the same. Where relief is granted on this theory, it must include all of the parties in the circle of the contemplated and possible actions. The injunction must not restrain one and not the other, unless there are special facts and equities entitling him to continue operations. *Johnson* v. *Hall*, 83 *Ga.* 281.

If the turpentine "run" for 1903 is in controversy, and all parties have been enjoined from exercising acts of ownership over this timber, title to which is in dispute, the court can pass such order as may be proper for saving the product; but having enjoined Wells, and likewise Peacock & Kelly, the latter should not be allowed to dissolve the same by giving bond; and direction is given that the order be modified accordingly.

*Judgment affirmed, with direction. All the Justices concur.*