## GRAY LUMBER COMPANY *v.* GASKIN, and *vice versa.*

1. Where it does not affirmatively appear from a bill of exceptions or the record that exception was taken in due time, the writ of error will be dismissed.
2. A party can have but one bill of exceptions in the same case ; but the fact that he has tendered and had certified another bill of exceptions can not be brought to the attention of the Supreme Court by averments in and exhibits to a bill of exceptions sued out by the opposite party in the case, in which there is no assignment of error upon a direct decision of the judge that he was authorized to certify the second bill of exceptions.
3. A conveyance of "timber suitable for turpentine and sawmill purposes," in one of the leases involved in this case, when construed in connection with the other provisions of such lease, gave to the grantee the use of such timber only as was suitable for both turpentine and sawmill purposes, and consequently did not include cypress timber.
4. A lease of "timber suitable for sawmill purposes" includes cypress timber, when there is nothing to show that, by the custom of the trade, only pine timber is embraced in such description.
5. Under a sale of "timber suitable for sawmill purposes," the purchaser can use timber of the kind described for any purpose which he sees proper.
6. A trespass is irreparable when, from its nature, it is impossible for a court of law to make full reparation in damages. The fact that it would be difficult, or even impossible, in a given case to procure evidence to show damages which are in their nature capable of exact computation does not make the trespass irreparable in a legal sense.
7. The cutting of timber may be enjoined when the defendant is solvent, the damages are reparable, and the plaintiff has not a "perfect title," if there exist "other circumstances which, in the discretion of the court, render the interposition of the writ necessary."
8. Under the operation of this rule an injunction may issue to restrain the cutting of timber where the circumstances indicate that the trespasses are constantly recurring and the defendant threatens to continue from day to day to cut the timber.

Argued January 30,—Decided March 7, 1905.

Injunction. Before Judge Parker. Coffee superior court. October 17, 1904.

John A. Gaskin filed a petition to enjoin the Gray Lumber Company from cutting timber on certain lots of land. He claimed

title to a part of the land under a deed from F. H. Gaskin, dated February 16, 1903, conveying the fee. The Gray Lumber Company claimed the right to cut the timber under a lease from F. H. Gaskin to Timmons, McWhite & Company, dated November 15, 1895, which had been duly transferred to it. This lease conveyed, for a term of ten years, "all and singular the timber suitable for turpentine and sawmill purposes, growing on" the lands described in the lease, which embraced the land to which the plaintiff claimed title. The lease further provided that the grantee was "to have and to use said described timber for turpentine purposes as aforesaid, with all the rights and privileges of cutting or boxing, dipping and using all the trees on said land for turpentine purposes, and to cut and use said timber for sawmill purposes as aforesaid, with all the rights and privileges of cutting, felling, and hauling the trees on said land suitable for sawmill purposes." The petition alleges that the defendant is cutting into cross-ties "the cypress timber growing and being upon these lands, the same not being suitable for turpentine and sawmill purposes;" that it is in like manner cutting and carrying away from the lands dead trees, and trees that were dead when the lease was executed, which are not suitable for sawmill purposes; and that it is in like manner cutting and carrying away from said lands trees which, by reason of defects therein, and of the smallness of their diameter, are unsuited for turpentine and sawmill purposes. It is alleged that these acts of the defendant are contrary to the letter and spirit of the lease under which it claims, and constitute a trespass for which the defendant is liable in damages to the plaintiff. The plaintiff claims title to another of the lots under a deed from Dearing, dated December 29, 1899, who acquired the lot under a deed from the administrator of Avery. The plaintiff claims a fee-simple title to another lot under a deed to him from the administrator of Avery, dated February 23, 1897. The defendant claims the right to cut timber from these lots under a lease made by Avery in November, 1894, to Gray and Gatchell, which was transferred to the defendant. This lease conveyed, for a period of eight years from the date of "the commencement to cut timber," the right to cut "timber suitable for sawmill purposes that will measure 14 inches at stump and up." It is alleged that this lease has expired by lapse of time; and that the defend-

ant is now threatening to enter upon the lands and cut and carry away, in the shape of cross-ties and otherwise, the cypress timber, the dead timber, and the small timber which was not conveyed by the lease.

The petition also alleges that on January 29, 1898, the plaintiff conveyed to the defendant the "sawmill timber" on one of the lots last above referred to, except such as plaintiff needed for plantation use; that the defendant is threatening to enter upon this lot and cut and carry away therefrom any trees that can be manufactured into cross-ties, regardless of whether the timber is suitable for sawmill purposes or not, including the cypress timber growing in the ponds, which it was never contemplated by either party to the lease from plaintiff should be included therein. It is alleged that the defendant has no authority, under any of the leases above referred to, to cut the timber into crossties; that it has no right to cut the cypress timber, the dead timber, or timber which on account of defects or smallness is unsuitable for turpentine and sawmill purposes; that to allow the defendant to cut the timber as it is threatening to do would compel the plaintiff, in order to get redress, to bring numerous suits from time to time as the trespasses are committed, which suits would be unsatisfactory for the reason that "adequate compensation could not be had, on account of the impossibility of ascertaining the exact value of the timber so wrongfully taken, or ascertaining its value with any reasonable degree of certainty." On the grounds just stated, and "because of these and other circumstances, and to prevent circuity and a multiplicity of actions," the plaintiff asks that the defendant be enjoined from cutting any of the cypress timber, dead timber, and other timber unsuited for turpentine and sawmill purposes on the lots referred to in the several leases. There was no allegation that the defendant was insolvent, or that the plaintiff had a "perfect paper title" to any of the lots.

The defendant filed a demurrer, setting up, among other things, that no sufficient reasons are set forth for the granting of the relief prayed for; that it is not alleged that the defendant is insolvent, or that the damages would be irreparable, or that the plaintiff has "a perfect paper title" to the lots in dispute; and that the petition shows on its face that the defendant has a right to do the acts which are sought to be enjoined. There are

numerous other special grounds of demurrer, but these need not be stated here. In its answer the defendant admits that it is cutting the cypress timber on the lands described in the lease to Timmons, McWhite & Company, and avers that it has a right to do so under the lease; that the dead timber which it is cutting is suitable for sawmill purposes; that very little, if any, of this dead timber was dead at the time of the execution of the lease; and that the defendant is ready to compensate the plaintiff for any dead timber cut which was dead at the time of the execution of the lease. The defendant denies that the lease from Gray and Gatchell, under which it claims, has expired, admits that it is cutting timber into cross-ties on the lands therein described, but says the timber cut is suitable for sawmill purposes, and that it has a right to cut it; avers also that it has a right to cut the timber on the lot described in the lease to it from the plaintiff.

The judge granted a restraining order as prayed, and at the hearing, on October 17, 1904, passed an order dissolving the restraining order as to the timber on a lot not referred to in the foregoing summary, and providing that, " as to the other lands mentioned in the petition, the injunction is refused as to the pine timber thereon and granted as to the cypress timber. It is therefore ordered that injunction issue as to the cypress timber." Both parties excepted to this order; the defendant on the ground that under the pleadings and evidence no reason for the grant of an injunction was shown, and that, even if this were not true, the court erred in enjoining it from cutting the cypress timber. The plaintiff excepted because the court did not enjoin the defendant from cutting " all the dead timber being upon the said lots of land in dispute."

There was a motion to dismiss the writ of error sued out by the Gray Lumber Company, upon the ground that the bill of exceptions was not certified within twenty days after the decision complained of, and also upon the ground that this was a second bill of exceptions, the plaintiff having tendered and had certified, on October 21, 1904, another bill of exceptions. The present bill of exceptions of the Gray Lumber Company was certified on November 3. A motion was also made to dismiss the writ of error sued out by the plaintiff, on the ground, among others, that the bill of exceptions was not tendered within twenty days after the

decision complained of. The decision complained of was made October 17, 1904. The plaintiff's bill of exceptions recited that it was tendered within thirty days after the Gray Lumber Company's bill of exceptions was certified. That bill of exceptions was certified on November 3, and the plaintiff's bill of exceptions was certified on December 17, 1904.

*Lankford & Dickerson,* for Gray Lumber Company.
*W. H. Griffin* and *R. A. Hendricks,* contra.

COBB, J. 1. We will first dispose of the motion to dismiss the writ of error sued out by the plaintiff. While his bill of exceptions was styled by him a cross-bill, the assignment of error therein contained is one which is appropriate only to a main bill of exceptions, and therefore the writ of error should have been sued out within twenty days after the rendition of the decision complained of. *Sumner* v. *Sumner,* 121 *Ga.* 1 (2). It does not affirmatively appear from the bill of exceptions that it was tendered within twenty days after the decision complained of. The bill of exceptions recites that it was tendered within thirty days from the time the bill of exceptions of the Gray Lumber Company was certified. This may or may not have been within twenty days after the decision of which complaint is made; and as it does not affirmatively appear that the bill of exceptions was tendered in due time, the writ of error must be dismissed. *Evans* v. *State,* 102 *Ga.* 763; *McDaniel* v. *Allison,* 115 *Ga.* 751; *Atkins* v. *Winter,* 121 *Ga.* 75.

2. The Gray Lumber Company's bill of exceptions recites that it was tendered within twenty days from the date of the decision complained of, and it was certified within that time. There is therefore no merit in the motion to dismiss the writ of error on the ground that the bill of exceptions was not tendered within due time.

It remains now to dispose of that ground of the motion to dismiss which alleges that this was the second bill of exceptions signed by the judge in this case. When the judge has signed a bill of exceptions in a case, he has exhausted his statutory power with reference thereto so far as concerns the party tendering the bill of exceptions; he can not subsequently certify another bill of exceptions at the instance of that party. *Perry* v. *Central Rail-*

*road*, 74 *Ga.* 411, and cit. In that case the fact that the judge had signed two bills of exceptions appeared in a certificate to the bill of exceptions which was transmitted to this court, and therefore that fact was properly before this court and could be made the foundation of a judgment dismissing the writ of error. In the present case the fact that the judge signed two bills of exceptions is brought to the attention of the court by an averment in the bill of exceptions sued out by the plaintiff, the writ of error upon which has been dismissed; and therefore there is nothing before the court to show that a prior bill of exceptions was certified. But even if the plaintiff's bill of exceptions were properly before us, we do not see how we could act upon the fact thus brought to our knowledge. The averments therein are nothing more than a mere certificate by the judge of the facts, signed after the other bill of exceptions had been regularly certified. If such certificate had been presented to this court independently of the bill of exceptions, it certainly could not have been considered. See *Woolf* v. *State*, 104 *Ga.* 536. If a supplemental certificate to the same bill of exceptions could not be considered, it would follow that the fact that a former bill of exceptions had been certified could not be brought before the court by another bill of exceptions, sued out by the opposite party, and verified by a certificate of the judge in which there was no assignment of error on the action of the judge in signing the second bill of exceptions. If counsel for the defendant in error had appeared before the judge and objected to the certification of the second bill of exceptions, and invoked a direct ruling from the judge as to his power to do so, it may be that such a ruling might have been brought before this court by an independent writ of error. See *Peeples* v. *Cavender*, 117 *Ga.* 948. The motion to dismiss the defendant's writ of error will be denied.

3. The lease to Timmons, McWhite & Company conveyed the right to cut "the timber suitable for turpentine and sawmill purposes." If this clause stood alone, it might with much force be contended that timber suitable either for sawmill or turpentine purposes could be used. But when read in connection with the entire lease, it becomes apparent that the parties had in mind only such timber as was suitable for both of these purposes. The clause of the lease providing that the defendant was "to

have and use said described timber for turpentine purposes as aforesaid" and " to cut and use said timber for sawmill purposes as aforesaid" seems to make this clear.   The expression "said described timber" evidently refers to "the timber suitable for turpentine and sawmill purposes."   This, then, was the timber which was to be used for turpentine purposes.   The phrase "said timber," in the latter part of the habendum clause, clearly refers to the " said described timber for turpentine purposes."   So that, when the whole lease is considered, the intention of the parties appears to have been that the timber embraced in the lease was timber which could be used for both turpentine and sawmill purposes ; and it seems to have been contemplated that the timber would be first boxed for turpentine and afterwards sawed into lumber, though of course the defendant was not absolutely required to box the trees before sawing them.   But it could not saw into lumber any tree which could not be boxed for turpentine.   The court will take judicial notice of the fact that turpentine can not be extracted from cypress trees ; and hence the lease conveyed no right to cut cypress trees on the lands described therein.

4. The lease from Avery to Gray and Gatchell conveyed the " timber suitable for sawmill purposes, that will measure 14 inches at stump and up."   There is nothing in this lease to indicate that the timber referred to must also have been suitable for turpentine purposes.   The judge evidently construed this lease to include only pine timber; but, in our opinion, such a restricted meaning is too narrow.   Words are to be given their usual and ordinary meaning.   " Timber suitable for sawmill purposes " means any timber which is ordinarily used for manufacture into lumber.   This would include cypress, or oak, or any other variety of timber which was suited for such use.   There is nothing in the lease to indicate that only pine timber was meant, and there is no evidence that by the custom of the trade the language used has such a restricted meaning.   Even if the terms were ambiguous, they would be construed most strongly against the party executing the lease and those claiming under him.

5. Nor can it be said that the defendant was not authorized to hew the timber into cross-ties.   The sale of the timber suitable for sawmill purposes carried with it the right to use such

timber for any purpose for which the purchaser saw fit to use it. If the timber was in fact "suitable for sawmill purposes," the purchaser could use it for cross-ties, or firewood, or for any other purpose which he saw proper. See, in this connection, *Perkins* v. *Morgan*, 91 *Ga.* 570, 572. The lease from Avery to Gray and Gatchell and the lease from the plaintiff to the defendant conveyed such of the cypress timber as was "suitable for sawmill purposes."

6. There was no allegation that the defendant was insolvent. Nor do the facts alleged or proved show that the damage would have been irreparable. The case is not within the rule laid down in *Camp* v. *Dixon*, 112 *Ga.* 872. There is, up to this time, no case decided by this court in which it was held that the simple cutting of timber trees was irreparable in damages. Such trees have a commercial value, which can be readily ascertained when the quantity of timber cut is known. The plaintiff alleges that the quantity of timber which the defendant might cut could not be readily ascertained, but this does not show that the damage would be irreparable. Inability to correctly estimate the damage after all evidence obtainable has been produced makes a case of irreparable damages, but difficulty in collecting evidence as to damage would not. "A trespass is irreparable when, from its nature, it is impossible for a court of law to make full and complete reparation in damages." *Justices* v. *P. R. Co.*, 11 *Ga.* 250.

7. Did the plaintiff prove any facts which entitled him to an injunction? Prior to the passage of the "timber cutter's act," now contained in the Civil Code, § 4927, the rule was that "Equity will not interfere to restrain a trespass, unless the injury is irreparable in damages, or the trespasser is insolvent, or there exist other circumstances which, in the discretion of the court, render the interposition of this writ necessary, among which shall be the avoidance of circuity and multiplicity of actions." Civil Code, § 4916. The Civil Code, § 4927, as amended by the act of 1899 (Acts 1899, p. 39), enlarged the office of the writ of injunction, so as to embrace cases where the cutting of timber was involved, by providing that such a trespass might be enjoined where the plaintiff has "perfect title" to the land on which the timber is situated, or to the timber, without reference to the character of the damages or the solvency of the defendant. This sec-

·tion was intended to enlarge, and not restrict, the office of the writ; and while it does not state in terms that the cutting of timber may be enjoined when "there exist other circumstances which, in the discretion of the court, render the interposition of the writ necessary," the section was not designed to prevent the issuance of the writ in such cases.    See *Smith* v. *Smith*, 105 *Ga.* 106, 108; *Wiggins* v. *Middleton*, 117 *Ga.* 162; *Wells* v. *Rountree*, 117 *Ga.* 839.    So that an injunction may in this State issue ·to restrain the cutting of timber, where (1) the defendant is insol-·vent; (2) the damages would be irreparable; (3) the plaintiff has "perfect title" to the land or to the timber; and (4) where there exist " other circumstances " which, in the court's discretion, render necessary the issuance of the writ.    In the present case it was not shown that the defendant was insolvent, or that the damages would be irreparable, or that the plaintiff had "perfect title;" and hence the injunction, if warranted at all, must be ·justified under the last of the grounds above stated.

8. What are these " other circumstances "?    The code enumerates one, viz., "the avoidance of circuity and multiplicity of actions."    Civil Code, § 4916.    Another is non-residence of a defendant who has no property in this State.    *Morgan* v. *Baxter*, 113 *Ga.* 148.    In *Camp* v. *Dixon*, 112 *Ga.* 872, the refusal of an injunction to restrain the cutting and removal of timber was reversed on the ground that, under the special facts of that case, the plaintiff having built sawmills and made large investments, the damages would have been irreparable.    The court did not in that case go to the extent of holding that the mere cutting of timber, without more, was such a trespass as would be enjoined, though it was said that the trend of modern decisions seemed to be in that direction, and some authorities are cited to that effect.    It is well settled that the frequency of trespasses is a ground· for equitable interference.    Thus in Pomeroy's Equity Jurisprudence, § 1357, it is said:    "If the trespass is *continuous* in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act *if it stood alone*, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions."    The rule is stated by Mr. Bispham as follows:    ".The

frequency of the acts of trespass constitutes another ground for the jurisdiction. The common-law action for damages furnished an adequate redress for a single trespass, or even for several, where there are no circumstances to indicate that the unlawful acts are to be repeated continuously; but where these acts of trespass are constantly recurring, and threaten to continue, it is settled that they may be repressed in equity by injunction." Bisp. Prin. Eq. (6th ed.) 560. In Georgia this rule has been applied to nuisances. In *Ga. Chem. Co.* v. *Colquitt*, 72 *Ga.* 172, it was held: "If a public nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action; and as an action may be brought for every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction, so as to do full and complete justice between the parties and terminate the litigation." In *Kavanagh* v. *Railroad Company*, 78 *Ga.* 271, 273, it was said: "And it appears to us, from the allegations in this bill and the proof submitted, that the grievance is constant and continuous. The plaintiff in error would have a suit continuously at stated times for her continuing damage, and thus a multiplicity of suits would arise; and this, if nothing else, would call for the interference of a court of equity." These decisions were approved in *Hill* v. *Fertilizer Co.*, 112 *Ga.* 788, 791.

No sound reason occurs to us why this rule should not be applicable to cases of trespass in cutting timber. Indeed, it was held in *Griffin* v. *Sketoe*, 30 *Ga.* 300, that "Injunction is a proper remedy to stay waste in cutting down and selling from the lot the valuable timber thereof." In the present case the defendant had been for some time cutting the timber. It stood squarely upon a supposed right to do so. It threatened to continue to cut the timber from day to day until lawfully prevented from so doing. An action at law for damages would have been a complete remedy for the injury sustained prior to the suit, but it would not have prevented further trespasses. Ought the plaintiff to be harassed and annoyed by being required to bring a new suit every day as long as the trespasses continued, when the whole controversy could be settled in one suit? As has been shown above, the code expressly authorizes the judge, in his discretion, to grant an injunction to restrain a trespass in any case where under equi-

table principles the writ should issue, and enumerates as among such cases the prevention of a multiplicity of suits.    Whenever it is shown that there are a number of suits, without reference to parties or the subject-matter, a multiplicity of suits would be shown, if that phrase be used in its generic sense.    But it is certainly not used in such a broad sense in the section of the code. The phrase has been used to describe that character of cases which would·be within the jurisdiction of a court of equity under the doctrine of quia timet, and usually styled bills of peace.    See Bisp. Prin. Eq. (6th ed.) § 415.    But to apply the expression simply to this class of cases and no others would be giving to it a meaning as much too narrow as the meaning first above alluded to would be too broad.    It is true that in *Hatcher* v. *Hampton*, 7 *Ga.* 49, Judge Lumpkin seems to have given the phrase multiplicity of suits this restricted meaning, but an examination of that case will disclose that nothing said by the learned judge on that subject was authoritative.    The trespass complained of had been enjoined by the circuit judge, but he had refused to enjoin the alleged trespasser from cultivating land which had already been cleared, and the case came to this court upon an assignment of error upon the refusal to grant the injunction as to the latter point.    The judgment of the court below was affirmed, and Judge Lumpkin takes occasion to remark that, in his opinion, the judge should have dissolved the injunction in toto.    The question as to cutting timber had been decided by the circuit judge in favor of the plaintiff, and this judgment was unexcepted to and was not before this court in any way.    In the cases above referred to, where the injunction was granted to restrain a continuing nuisance, the grant of the injunction was placed distinctly upon the ground that it would prevent a multiplicity of suits, thus showing that this court at that time construed the phrase in a ·much broader sense than that indicated by Judge Lumpkin.  But whether it be described as a multiplicity of suits, or in any other way, we see no reason why, under modern authority, a court of equity can not by injunction restrain a continuing trespass until the question of title can be decided at the final hearing.

It follows from what has been said, that the judge properly granted an injunction as to the cutting of cypress timber upon the land described in the Timmons lease, but that he erred in enjoin-

ing the cutting of cypress timber upon the land described in the other leases.

*Judgment, on bill of exceptions sued out by the Gray Lumber Co., affirmed in part, and in part reversed ; the other bill of exceptions dismissed. All the Justices concur.*