## LANKFORD *v.* PETERSON.

A deed conveying "All of lot of land number 178, in the sixth district of said county of Coffee, containing 490 acres, more or less, save and except the timber on said lot of land suitable for turpentine purposes and the timber thereon suitable for sawmill purposes, except dead timber for plantation purposes, which is hereby reserved by said B. Peterson unto himself, his heirs and assigns, with the privilege of utilizing the same for turpentine purposes, within and during a period of five years from the date of this instrument, and with the privilege to him, the said grantor, to cut and remove the timber on said lot of land suitable for sawmill purposes within and during the space and period of eight years from the date of this instrument; the said grantor to have the further privilege of such ingress and egress in, from, upon and over said lot of land as may be necessary for the removal of said timber and turpentine products therefrom," reserves to the grantor, for sawmill use during the specified time, all the dead timber on the land suitable for sawmill purposes, with the right to the grantee to have and enjoy during this time so much thereof as may be necessary for plantation use.

Submitted July 18, 1906.—Decided February 15, 1907.

Petition for injunction.    Before Judge Parker.    Coffee superior court.    April 10, 1906.

*Lankford & Dickerson,* for plaintiff.

*F. Willis Dart,* for defendant.

EVANS, J. On November 7, 1904, B. Peterson executed to Levi O'Steen his deed, conveying "All of lot of land number 178, in the sixth district of said county of Coffee, containing 490 acres, more or less, save and except the timber on said lot of land suitable for turpentine purposes and the timber thereon suitable for sawmill purposes, except dead timber for plantation purposes, which is hereby reserved by said B. Peterson unto himself, his heirs and assigns, with the privilege of utilizing the same for turpentine purposes, within and during a period of five years from the date of this instrument, and with the privilege to him, the said grantor, to cut and remove the timber on said lot of land suitable for sawmill purposes within and during the space and period of eight years from the date of this instrument; the said grantor to have the further privilege of such ingress and egress in, from, upon and over said lot of land as may be necessary for the removal of said timber and turpentine products therefrom." Subsequently O'Steen conveyed to Lankford that part of the land which lay east of a named railroad, containing 100 acres, more or less. Lankford filed his petition against Peterson to restrain him from cutting and removing any dead timber on land embraced in his deed from O'Steen. On the interlocutory hearing the court construed the reservation of timber for sawmill purposes, in the deed from Peterson to O'Steen, to include the dead timber suitable for sawmill purposes, except so much and such as may be used for plantation purposes; and denied the writ of injunction. The plaintiff excepted to the refusal of an injunction, and submits, in his brief filed in this court, that the only question involved in the present record is the construction of the deed from Peterson to O'Steen.

When we proceed to analyze a written instrument, we should approach the undertaking with a full appreciation of the fundamental rule of construction that effect shall be given to the intention of the maker of an instrument, as far as the same is lawful and can be gathered from the contents of the paper. *Peterson* v. *Atlantic R. Co.,* 120 *Ga.* 967. The terms of the deed evince a clear and unambiguous intention to except from it timber suitable for sawmill purposes. Was this exception limited to grow-

ing timber, or did it also embrace such dead timber as was proper for sawmill purposes? The draftsman of the deed was careful to draw the distinction between timber suitable for extracting turpentine and that suitable for sawmill purposes. The reservation in the deed excepts "the timber on said lots of land suitable for turpentine purposes and the timber thereon suitable for sawmill purposes," clearly indicating that timber adapted for one purpose might not be fit for the other, and indicating an intent to except timber suitable for either purpose. A conveyance of timber suitable for *turpentine and sawmill purposes,* if the context requires it, will convey such timber only as is fit for both turpentine and sawmill use, while, on the other hand, if the conveyance be of timber suitable for sawmill purposes it will include *all* timber ordinarily used for manufacture into lumber. *Gray Lumber Co. v. Gaskin,* 122 *Ga.* 342. There is no reason for saying that the words "timber . . for sawmill purposes," when employed in a grant, should have a different meaning when used to express an exception in a grant. The exception of the sawmill timber itself contains an exception of "dead timber for plantation purposes." It is contended that this has the effect of conveying all the dead timber, and limiting the sawmill timber excepted to growing trees. We do not think such an interpretation can be placed upon the exception in the reservation of timber for sawmill purposes. We may gather from the tenor of the whole deed that the grantor was careful not to sell his sawmill timber, and the grantee was purchasing the land for agriculture, and not sawmill use. When the land, or any part of it, was devoted to agriculture, such dead timber as might be necessary for plantation use was conveyed. The context shows that this clause was used not so much as descriptive of a certain class of trees excepted from the reservation of the sawmill timber as it was to indicate the grantee's rights to have and enjoy the dead timber while it remained on the land, for plantation purposes, though such dead timber might also be suitable for sawmill use.

We concur in the construction placed on the instrument by the able trial judge, and his refusal to grant an injunction is

*Affirmed. All the Justices concur, except Fish, C. J., absent.*