## CAMP et al. v. GARBUTT LUMBER COMPANY.

1. When the bill of exceptions recites that, in an interlocutory hearing before the judge, certain documentary evidence was introduced subject to specified objections as to its admissibility, and it does not appear whether the evidence was excluded, or any ruling upon its admissibility was made, nor is there any assignment of error thereon, no question as to the admissibility of the evidence is presented, and such evidence will be treated by this court as having been considered by the judge in arriving at his judgment.
2. The cutting of timber by one who shows no title or claim of right should be enjoined at the instance of an owner in severalty or in common of the timber, where the circumstances show that the trespasses are constantly recurring, and the defendant threatens to continue to cut the timber from day to day.

Argued June 3,—Decided October 8, 1907.

Petition for injunction. Before Judge Mitchell Echols superior court. March 30, 1907.

*J. L. Sweat*, for plaintiffs.

*Cranford & Wilcox*, for defendant.

EVANS, J.   R. J. and B. F. Camp sought to enjoin the A. G. Garbutt Lumber Company from cutting and removing the timber from lot of land number 90 in the 16th district of originally Irwin, now Echols county.  The writ of injunction was refused, and the plaintiffs excepted.   On the interlocutory hearing it was made to appear that this particular lot of land was granted to Benjamin S. Jordan.   In 1860 the administrator of Jordan conveyed the land to Skelton Napier, but no order of court authorizing the sale was exhibited to the judge.   It was shown that Emily E. Jordan and Leonidas Jordan were the sole heirs at law of B. S. Jordan, and these heirs conveyed by deed, in 1871, land lot number 90 to John T. Napier, executor of the last will and testament of Skelton Napier.   Skelton Napier died, leaving a widow and seven children, among whom was John T. Napier.   Plaintiffs also introduced a certified copy of the will of Skelton Napier, dated in 1852, and the codicil thereto purporting to have been executed in 1856.   In the will the testator directed that all his property both real and personal (save that devised to his wife, the Spivey plantation, and his negro slaves) be sold by his executor, and the proceeds "be divided share and share alike between my wife and each of my children, that is to say, my wife and each of my children having an equal share," etc.   The will further provided that the devise to his son William "be and is hereby invested in trust to my sons John T. Napier and Thomas N. Napier as trustees, and not otherwise, for the sole and separate use of said William and his children. . .   The property to remain in trust as aforesaid during the natural life of said William, and then go to his children, or on failure of children to his heirs by consanguinity."  It was also stipulated in the will that the devise to the testator's daughters "be held in trust for them and their children, should there be any," etc.   No trustee for the daughters was named in the will, nor was it shown that they had children at the testator's death.   The plaintiffs also introduced a certified copy of "the agreement of the heirs of the estate of Skelton Napier, late of Bibb County, Ga., deceased, to divide the estate of the said Skelton Napier, deceased, between the heirs of said estate, as it all now appears of record in this [ordinary's] office in Book of Returns M No. 2, folio 509."  The general scheme of this written agreement was to divide the estate in kind, and the wild land was

to "go and belong to John T. Napier in his own right, and said John T. Napier, trustee for William P. Napier, as directed and provided as to said trust in the will of the said Skelton, deceased, that is, one half to each." The plaintiffs also introduced letters of administration on the estate of John T. Napier, an order from the court of ordinary authorizing a sale of land lot number 90 by the administrator of John T. Napier, and a deed by the administrator of John T. Napier to John T. Wiley, and mesne conveyances from John T. Wiley to the plaintiffs. An affidavit by D. W. Barnes was offered by the plaintiffs, wherein affiant deposed that the plaintiffs and their predecessors in title had been in continuous possession of lot 90 for more than seven years, evidenced by such acts as extracting turpentine from the trees, and cutting cross-ties off the land. The only evidence offered by the defendant was an affidavit of W. A. Ham, wherein affiant deposed that plaintiffs and their grantors had not been in exclusive or continuous possession of the land for seven years. The bill of exceptions recites that the plaintiffs introduced in evidence certified copies of the will of Skelton Napier, and of the division in kind among his distributees and legatees, "subject to the objections interposed thereto by defendant's counsel," which objections are set out in the bill of exceptions. At the conclusion of the evidence the judge refused the injunction, which is the only error complained of in the bill of exceptions.

1. Before discussing the character of the plaintiffs' title, we will take up the recital in the bill of exceptions that certain documentary evidence was received in evidence subject to certain objections. The record is silent as to whether the court ever passed upon the merits of the objections. The documents were allowed in evidence subject to the objections, and must necessarily have been considered by the court, in the absence of any statement or recital to the contrary. Hence, we can not consider the merits of the several objections, and must treat the case as if no objections had been interposed to this evidence, or, if interposed, had been overruled and no exception taken thereto.

2. It is said in the brief of counsel for defendant in error, that the record discloses that all the heirs and legatees of Skelton Napier did not sign the agreement of division of his estate, and on this account, as well as for other reasons, the agreement did

not have the effect to assign to any particular distributee or legatee a title in severalty to any particular property of their testator. Without discussing the merits of this contention, we think that, even if it be sound, the plaintiffs had such an interest in the land as gave them the right to preserve the property from spoliation by a trespasser. There can be no doubt that whatever interest John T. Napier had in this land passed to these plaintiffs. If the deed from the heirs of the grantee from the State to John T. Napier, as executor of Skelton Napier, be treated as conveying the title to John T. Napier individually, then the plaintiffs would have title to the land. If it be construed to vest the title in Skelton Napier's estate, then John T. Napier would have an interest in it, whether this particular land passed under the will or not. Independently of the partition of Skelton Napier's estate, the plaintiffs became tenants in common with the other legatees, by the purchase of this land from the grantees of the administrator of John T. Napier. The Civil Code, §4999, declares that any tenant in common, or other person having a part interest in lands, may have and maintain an action in ejectment or trespass for the recovery of such lands, or for an injury thereto, without joining with him any other person as plaintiff. The plaintiffs, therefore, have title at least to an interest in this land, and therefore may protect their estate from trespass by showing grounds for injunction. *Downing* v. *Anderson*, 126 *Ga.* 373 (55 S. E. 184). In *McArthur* v. *Matthewson*, 67 *Ga.* 143, it was said: "In a suit for injunction complainants, on showing they have, prima facie even, an interest in the property, may maintain their bill." The plaintiffs having at least an interest in the land, did they show any right to the equitable remedy of injunction? This lot of land contains four hundred and ninety acres. The defendant was engaged in cutting and removing the sawmill timber thereon when the suit was instituted. The officers and agents of the defendant threatened to continue cutting the timber unless lawfully prevented from so doing. It will require some time to complete the cutting and removal of the sawmill timber from so large a body of land. The defendant did not even attempt to show any title to support its claim of ownership. Under such circumstances, if the plaintiffs show title to an undivided interest in the land and timber, the defendant should be enjoined from committing a continuous and

destructive trespass by denuding the land of its most valuable timber. *Gray Lumber Co.* v. *Gaskin,* 122 *Ga.* 342. (50 S. E. 164). We therefore think his honor should have enjoined the cutting and removal of the timber, until the final trial of the merits of the case.        *Judgment reversed.   All the Justices concur.*