## SILVER *v.* MAYOR AND ALDERMEN OF SPARTA.

The fact that a municipal corporation, after having granted to a particular person, for a specified sum, a license to sell spirituous liquors for a designated year, issued to another person a like license, covering the same period, for a smaller consideration, does not give to the former any right of action against the municipality; nor has he, as a dealer, any concern with the transaction between the corporate authorities and the second licensee, or, as such, any right for any reason to cancel or set aside any contract growing out of such transaction. This is true although the transaction in question may have been unlawful, irregular, and have resulted in injury to the business of the first licensee.

Submitted March 21, — Decided April 21, 1899.

Equitable petition. Before Judge Reese. Hancock superior court. February 9, 1898.

*Charles A. Picquet,* for plaintiff in error.
*R. H. Lewis,* contra.

LITTLE, J. The plaintiff in error brought suit in the superior court of Hancock county against the Mayor and Aldermen of the Town of Sparta, making substantially the following allegations: The defendant is indebted to her in the sum of $12,-500 damages, for that in December, 1896, one Mandel, who had been theretofore conducting the business of retailing spirituous liquors in the Town of Sparta, proposed to petitioner that the latter purchase a certain quantity of spirituous liquors which would remain in his store after the expiration of his license, said Mandel expressing his intention to leave Sparta and go into business elsewhere. Prior to that time petitioner's husband had been engaged in the same business in said town, and, believing the statement of Mandel, as agent of petitioner accepted said proposition. About the last of December petitioner was informed by an officer of the corporation that the corporation would not issue a license to one of the Mandels to sell liquor during the year 1897, that Mandel did not have the sum of $4,000, which was the amount the mayor and aldermen had fixed for said license, and that they would not accept an offer, previously made by Mandel, to convey to the mayor and aldermen a tract of land and pay such sum in addition thereto as would aggregate $4,000 for said license, if petitioner would pur-

chase a license from the corporation and pay the sum of $4,000 therefor, but that the corporation could not issue an exclusive license, as the same would be illegal. Believing the representation of this officer, petitioner agreed to pay $4,000 for the license, stating to the officer that she would not receive the license and pay that sum or any other sum if a license would be granted to Mandel authorizing him to retail liquor in said town in said year of 1897. This agreement was transmitted to the corporation by the officer referred to, and the corporation issued a license to petitioner in accordance with such agreement. The mayor of the Town of Sparta entertained bad feelings towards her husband, and desired to injure petitioner, and after petitioner had purchased the license the mayor proposed to Mandel that he would issue to him a license to sell liquor in said town for the year 1897, if Mandel would convey to the corporation a tract and parcel of land lying near said town, and in addition thereto that the corporation would pay Mandel $500 in cash. This proposition was accepted for the purpose of defrauding and damaging petitioner; and the said mayor issued to Mandel a license to retail spirituous liquors in the town of Sparta for the year 1897, giving him equal privileges with those granted to petitioner; and on the 9th of January, 1897, the said Mandel conveyed the tract of land, as agreed on, to said corporation. The land in question is described in the petition as containing 575 acres, more or less. Petitioner avers that the land was not worth more than $2,200, and had been repeatedly offered for $2,500, but a purchaser could not be found at that price. So that the corporation issued to Mandel a license for about $2,500 less than that paid by petitioner. The ostensible consideration agreed on in the purchase of the land was $4,500, and was made that the transaction might appear fair upon its face. Petitioner alleges that the tract of land constitutes a farm, that it is used for farming purposes, it is beyond the corporate limits of the town of Sparta; and petitioner says that the corporation did not have the power to purchase the farm and enter into the vocation of farming, which it has done. Petitioner alleges that the deed of conveyance is void because it forms a part of a fraudulent scheme to defraud peti-

tioner. It is further averred that the corporation did not have the power to issue a license save for cash, and that Mandel did not pay the corporation anything, but received from it the sum of $500. It is further alleged that if the corporation had not issued a license to Mandel, petitioner would have sold $30,000 worth of liquors in 1897, and realized a profit of $10,000.00, but on account of the issuing of the license to Mandel she was unable to sell $10,000 worth of liquors in said year, without any profit at all, whereby she was damaged $10,000. It is further alleged that the issuance of the license to Mandel was a discrimination against petitioner. The prayer is, that the deed from Mandel to the corporation be declared void and cancelled, and that petitioner have judgment for the sum of $12,500 damages against the corporation. By amendment it is alleged that the Mayor and Aldermen of Sparta exchanged a license with Mandel for the tract of land described, and paid Mandel $500 in addition. The prayer in the petition is amended by praying that she have a judgment in the sum of $2,500, which amount she alleges was fraudulently and illegally obtained from her by the Mayor and Aldermen of Sparta.

The defendant demurred to the petition on a number of grounds. The court sustained the demurrer and dismissed the petition, and the plaintiff in error excepted.

1. This is a very remarkable case; and if the facts averred in the petition be true, a singular and entire misconception of the legal nature of a license to retail spirituous liquors, as well as of the powers and duties of a municipal corporation, exists in the minds of both parties to the cause. In any view of the case, the demurrer to the petition was properly sustained. The 18th section of an act of the General Assembly, entitled "An act to alter and amend, revise and consolidate the several acts granting authority to the town of Sparta, and to confer additional powers upon the mayor and aldermen of said town, and for other purposes," provides "that said mayor and aldermen shall have exclusive right to grant, or, in their discretion, refuse to grant license to sell malt, spirituous, or intoxicating liquors within the corporate limits of said town; shall prescribe the terms on which license may be issued, and regulate and

control the same." Acts 1893, p. 316. A license is defined to
be the granting of a special privilege to one or more persons,
not enjoyed by citizens generally, or, at least, not by a class to
which the licensee belongs; and three leading ideas are involved
in the definition of a license under the liquor laws. First, it
confers a special privilege, or franchise, upon selected persons
to pursue a calling not open to all. Second, it legalizes acts
which, if done without its protection, would be offenses against
the statute. Third, it is a privilege granted as a part of a sys-
tem of police regulation, and therein is distinguishable from
taxation. Black on Intoxicating Liquors, §117. In the case
of the Metropolitan Board of Excise *v.* Barrie, 34 N. Y. 659, it
is said, "These licenses to sell liquors are not contracts between
the State and the persons licensed, giving the latter vested rights,
protected on general principles and by the constitution of the
United States against subsequent legislation, nor are they prop-
erty in any legal or constitutional sense. They have neither
the qualities of a contract nor of property, but are merely tem-
porary permits to do what otherwise would be an offense against
a general law. They form a portion of the internal police sys-
tem of the State, are issued in the exercise of its police powers,
and are subject to the direction of the State government, which
may modify, revoke, or continue them, as it may deem fit."
Again, in the case of *Brown* v. *State*, 82 *Ga.*, 224, it was said
by Simmons, Justice, who delivered the opinion of the court,
in referring to a license granted to retail liquors, that "Such a
license is in no sense a contract by the State, county or city,
with the person taking out the license. It is simply a permit
granted by the authorities to do business under the license; and
the license may be revoked by the legislature at any time." In
the case of *Sprayberry* v. *City of Atlanta*, 87 *Ga.* 123, it was said
by the same Judge, in delivering the opinion of the court, that
"The issuing of a license to retail liquor is not a contract, but
is a permission to the licensee to engage in the business under
such restrictions, conditions and limitations as may appear ju-
dicious to the authority issuing the license." We may, there-
fore, take it as established that when a license was issued to the
petitioner by the Mayor and Aldermen of the Town of Sparta,

she was thereby invested with no right of property, but that she was only given a permit to engage in the business of retailing spirituous liquors, subject to the control of the municipal authorities of said town, and such authorities had the exclusive right to fix the license fee at such a sum as in their judgment the best interest of the people of the town required. Having then a permit to engage in the business, and having done so according to the terms of the license, the petitioner had no right to complain if the constituted authorities, in the exercise of the same discretion which caused the license to be issued to her, granted a similar permit to another person.

But it is said that the license was issued to Mandel through the mayor of the town, in consequence of a desire on the part of the latter to injure the petitioner. It may be replied, that under the statute the mayor has no power to issue licenses, but such power is conferred alone upon the mayor and aldermen as an official body. The exercise of this power is a quasi-judicial act, and, as it involves judgment and discretion, it must be exercised by the authority to which it is confided. It can not lawfully be delegated to any other person, or body. Black on Intoxicating Liquors, §§ 155, 171. Being such, the official body with whom the power is lodged is not subject to respond in damages to one who feels himself aggrieved by their action. *Ison* v. *Mayor*, 98 *Ga.* 623. It is averred in the petition that the mayor and aldermen, while requiring from the petitioner cash in payment of the license fee, accepted from Mandel a tract of land of estimated value of $4,500, and paid to Mandel $500, the difference between the license fee and the value of the land. Assuming this to be true, and conceding, as we do, that such action was clearly illegal, beyond the powers of the corporation, and of which any citizen of the town would have a right to complain, it does not give to the licensee any right to recover damages for such illegal action, nor does it give her any right in an action, such as is set out in the petition, to have the deed cancelled; for however much injury such action might have done to the citizens at large, it in no way affected the right of the petitioner to engage in the business for which she was licensed. It is true she alleges that by this means and

the issuance of the license under these circumstances she had competition in her business. But when she applied for and received a license to engage in the business of retailing spirituous liquors, she did so subject to the power of the municipal authorities of Sparta to grant other license for the same business— a power which could not be alienated nor legally curtailed by any stipulation or agreement. In the case of *County of Appling* v. *McWilliams,* 69 *Ga.* 840, the facts were, that the law fixed the fee for license to retail spirituous liquors at $1,000, and that in payment for a license the ordinary received $500 in cash from an applicant and took his note for the balance. The court below held that the note was illegal and uncollectible; but that judgment was reversed by this court, and, referring to this action of the ordinary in accepting the note, Chief Justice Jackson, delivering the opinion of the court, said: "His conduct, however, is highly reprehensible. . . Unquestionably the ordinary is bound to the county to pay the note; and as these makers got by it what they bargained for, they ought not to escape, but . . . must all be held bound to pay it." Whatever may be the effect of the illegal action alleged in the petition, it is certain that the petitioner can not derive any pecuniary benefit therefrom in the way of damages, nor recover from the municipal authorities any part of the sum paid by her as the license fee for the privilege of retailing spirituous liquors for the year 1897, under the facts stated in the petition. As fixing the amount of her damages, it is further alleged that if the corporation had not issued the license to Mandel she would have sold $30,000 of liquors during the year and realized a profit of $10,000; whereas she realized no profit at all. If up to this point the plaintiff had made out a case entitling her to damages, the amount of which was to be measured by the profit she would have made, the petition would still be subject to demurrer. See *Kenny* v. *Collier,* 79 *Ga.* 743; *Porter* v. *Johnson,* 96 *Ga.* 145.

From what has been said, it must follow that the demurrer to the petition was properly sustained, and the judgment is

*Affirmed. All the Justices concurring.*