## PURCELL *et al. v.* PILGRIM.

In a suit for specific performance and injunction, a judgment was rendered
  at an interlocutory hearing, granting a permanent injunction.  Error
  was assigned upon the judgment.  The case being for decision by the
  entire bench of six Justices, all of the Justices agree that the judge was
  not authorized at such hearing to grant a permanent injunction; but
  the court is equally divided upon the question whether the judge was
  authorized, under the pleadings and evidence, to enjoin the defendants
  until the final trial, Fish, C. J., and Atkinson and Hill, JJ., being of
  the opinion that such an injunction was authorized, and Beck, P. J.,
  Gilbert and George, JJ., being of the opinion that such an injunction was
  not authorized.  It is therefore ordered that the judgment of the trial
  court stand affirmed by operation of law, with direction that the judg-
  ment be so modified as to make the injunction temporary.

No. 2179.  SEPTEMBER 14, 1921.

Injunction.  Before Judge Hutcheson.  DeKalb superior court,
June 25, 1920.

The exception is to a judgment granting an injunction at an
interlocutory hearing in the case of J. M. Pilgrim against S. E.
Purcell and J. A. Sudderth, being a suit for specific performance
of a contract, and for injunction.  Under the pleadings as amended
and the evidence (some of the evidence being conflicting), the
judge was authorized to find the following:  M. S. Sulunius ob-
tained a lease on a certain lot at Chamblee, Georgia, and con-
structed a building thereon.  Sulunius executed to the defendant.
S. E. Purcell, a lease to the building for a term of twelve months,
with power to sublet.  Purcell occupied the rented property and
used it as a store for sale of tobacco, cigars, soft drinks, lunches,
fruit, candy, and military supplies.  During such occupancy Pur-
cell executed a written lease for a term of eleven months (being
the balance of his own term) unto D. G. Jacobs, for described
floor space in the front part of the building, for the purpose of
maintaining therein a billiard and pool room.  The operation of
such room would attract customers for Purcell's business, and
the lease required the operation of at least three tables, to be
installed within a stated time.  The lease was signed by Purcell
and Jacobs, and it gave the latter power to sublet or assign with-
out written consent of the former.  Jacobs paid in advance the
stipulated rent for one month, as required by the contract.  At
the time the lease was executed, a billiard and pool room was being
operated in an adjoining building by J. M. Pilgrim, the plaintiff.

Two days after execution of the lease, Jacobs executed a written transfer thereof for a valuable consideration unto Pilgrim. On the day of the transfer and repeatedly thereafter Pilgrim offered to install billiard and pool tables in the space according to the contract expressed in the lease, but Purcell refused to furnish him with a key or to admit him in the rented space for the purpose of installing tables in pursuance of the contract. A few days after the transfer, and after the time specified in which the tables should be installed, Purcell installed pool tables in the rented space, and continued thereafter to operate them himself and in connection with J. A. Sudderth. The introduction of Sudderth was the result of an undertaking between Purcell and Sudderth to get rid of Pilgrim, who had already instituted suit against Purcell to enjoin him from operating the tables in the rented space. With the above object in view, Purcell and Sudderth went through the form of a sale of Purcell's entire business to Sudderth; and these two, after informing Sulunius of the injunction suit, induced him to go through the form of accepting a surrender of the lease to Purcell and executing another on similar terms to Sudderth. After the above-described transactions both Purcell and Sudderth continued in the physical operation of the business. Pilgrim's object in purchasing the transfer from Jacobs was to conduct a billiard and pool room in the rented space for the profits to be derived therefrom, and also to save his existing business in the adjoining building from the damage that it would suffer from competition with Jacobs operating a similar business in the space leased from Purcell. Under the circumstances, the injury to Pilgrim's existing business on account of the competition carried on by Purcell and Sudderth in the rented space, and the loss of profits that Pilgrim would have made from the business he intended to carry on in such space, was substantial, but incapable of ascertainment. In granting the injunction it was " ordered and adjudged that the defendants, S. E. Purcell and J. A. Sudderth, their agents and employees, be and they and each of them are hereby enjoined and restrained from using any part of the premises described in the original petition as amended, . . for the purpose of carrying on and maintaining or operating a pool and billiard saloon," etc.

*Alonzo Field,* for plaintiffs in error. *R. B. Blackburn,* contra.

PER CURIAM. The case being for decision by the entire bench of six Justices, all of the Justices agree that the judge was not authorized at such hearing to grant a permanent injunction; but the court is equally divided upon the question whether the judge was authorized, under the pleadings and evidence, to enjoin the defendants until the final trial, Fish, C. J., and Atkinson and Hill, JJ., being of the opinion that such an injunction was authorized, and Beck, P. J., and Gilbert and George, JJ., being of the opinion that such an injunction was not authorized. It is therefore ordered that the judgment of the trial court stand affirmed by operation of law, with direction that the judgment be so modified as to make the injunction temporary. The views of the Justices are stated below.

ATKINSON, J. Each instrument of the chain of leases extending from Sulunius to Pilgrim conferred express power to sublet, and there was no objection to any subtenant until after the chain had been completed and Pilgrim's interest as a sublessee had attached. After such interest had attached, Sulunius having notice thereof could not, by accepting surrender of Purcell's lease and executing a new lease to Sudderth as a part of an enterprise between Sudderth and Purcell to circumvent Pilgrim, divest the interest of Pilgrim, or defeat his right to conduct the contemplated business specified in his lease. Under such circumstances, Sudderth, being in league with Purcell, would stand in no better position than Purcell; and Pilgrim, being transferee of Jacobs, would stand in the same position as Jacobs, the immediate lessee of Purcell. Pilgrim's right under his lease was to conduct a billiard and pool room in definite space in the store of Purcell. This was necessarily a right to exclusive use of such space, because the nature of the business would not permit a similar business by the lessor or any one else in the identical space, and the grant of such use by Purcell implied a covenant of quiet enjoyment as against himself and all persons claiming under him. Notwithstanding such implied covenant, Purcell committed a breach of it and proceeded with Sudderth, in manner hereinbefore indicated, to occupy the rented space and conduct therein a billiard and pool room. The question arises, was the judgment of the trial court authorized to the extent of temporarily enjoining Purcell and Sudderth from conducting a

billiard and pool room in the space leased to Pilgrim? The Civil Code, § 5490, recognizes and declares the principle that equity by writ of injunction will restrain any act by a private individual which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided by law. In *Kenny* v. *Collier,* 79 *Ga.* 743 (2) (8 S. E. 58), it was held: "Where there is a contract at a specific sum for the rent of premises for one year from and after a future day, in an action thereon by the tenant against the landlord for not admitting him into possession, the measure of damages is the excess in the value of the term over the amount agreed to be paid as rent. If no excess, nominal damages only are recoverable. Anticipated profits from a business intended to be carried on by the tenant upon the premises are not recoverable." For the breach of the covenant by refusing admittance to Pilgrim and continuously operating a billiard and pool room in the leased space, Pilgrim had a remedy at law against Purcell and Sudderth for damages; but was that remedy adequate? It is said in 14 R. C. L. 344, § 46: "A remedy at law, to exclude appropriate relief in equity, must be complete and the substantial equivalent of the equitable relief. It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." The principle thus stated was recognized and applied in Western Union Telegraph Co. *v.* Rogers, 42 N. J. Eq. 311 (11 Atl. 13). The syllabus in that court was: "R., owning or controlling a hotel at Long Branch, made a written contract giving the complainants the exclusive right to have and operate a telegraph office therein during the season of 1884, with the same right for each succeeding season, unless a specified written notice to the contrary should be given. No such notice has been given. *Held,* that this court would enjoin R. from allowing a rival telegraph company to operate a competing office in the same hotel during the season of 1885." It was contended that injunction should not issue, because the plaintiff had an adequate remedy at law, and further because the damages were not irreparable. The opinion dealt with both of these contentions, saying: "The principal defense by way of answers and argument is, that for this manifest and confessed breach of the agreement with the

complainant, the complainant has an adequate remedy at law. In other words, it is insisted that the transaction exhibits nothing more than the ordinary violation of a contract, the damages for which are easily ascertainable, and are therefore a proper subject to be submitted to a jury. This insistment then amounts to this: that it is the duty of this court to allow parties to violate their agreements at will, and those who participate in such violation to enjoy the fruits thereof, and oblige the injured party to carry on a litigation at law for redress of his wrongs. I do not think this court is so helpless in such case. I think it proper for this court in such case to aid the party who has the first and unquestioned right, and to oblige the interfering party to carry the litigation at law for damages for breach of contract. Again, it is urged that the complainant cannot be heard in this court, because the court never exercises jurisdiction unless it appears that the damages threatened are irreparable. This, it is true, is one well-settled rule; but another is equally well settled, viz.: that the party will not be driven to his legal remedy where it may appear that that remedy will prove inadequate. In this case there can be no doubt but that the complainant could at law recover; but recover what? Most likely not more than six cents, or some other merely nominal sum. Now, I think, no thoughtful person will insist that such result would be adequate. There is enough in the case to show that the complainant has many offices, of which this is one, and that this one is part of a system of telegraphing for commercial and other business interests; and that while this one is a part, it is but a small part — a very small part, indeed. Yet, however small, it has rights therein; but because so small in itself, it would be impossible for any jury, the most fair-minded and enlightened, to ascertain the damages. It is not like the breach of an agreement to deliver grain or any other article of sale, the value of which is easily determined. Suppose the injunction be not allowed, how then can the complainant fix his damages at law beyond that which is merely nominal? He cannot take last year's transactions as a guide, for none can determine from those, since it is plain that the number of telegrams sent from, or received at, a given point depends not only upon the number of persons desiring to be accommodated and the activity of business generally, but also

upon the extent and variety of connections. Nor can the damages be fixed by the amount of business done by the defendant, the Baltimore and Ohio Telegraph Company. It could be said, on the one hand, that it has greater facilities for business, and on the other, less. But I think these observations are enough to show the application of the rule of law as now given. Kerr on Inj. 200, says: ' By the term ' irreparable injury ' it is not meant that there must be no physical possibility of repairing the injury; all that is meant is that the injury would be a grievous one, or at least a material one, and not adequately reparable by damages at law; and by the term ' the inadequacy of the remedy by damages ' is meant that the damages obtainable at law are not such a compensation as will, in effect, though not *in specie,* place the parties in the position in which they formerly stood. . . The fact that the amount of damage cannot be accurately ascertained may constitute irreparable damage. . . . It is no objection to the exercise of the jurisdiction by injunction that a man may have a legal remedy. The question in all cases is whether the remedy at law is, under the circumstances of the case, full and complete.' Again, 1 Joyce on Inj. 75: ' When the construction of a contract is clear and the breach clear, it is not a question of damage, but the mere circumstance of the breach of contract affords sufficient ground for the court to interfere by injunction.' See also Id. 503, 554; see also 2 Id. 852; Great Northern Ry. Co. *v.* Manchester Ry. Co., 5 De G. & Sm. 138; 2 Joyce on Inj. 1035."

The case of *Justices* v. *P. R. Co.,* 11 *Ga.* 246, was a suit for injunction to prevent destruction of certain toll-gates maintained on a plank road by the complainants. The trial judge in effect granted a temporary injunction, and the judgment was affirmed. In the course of the opinion Nisbet, J., said: " It is well understood that equity will not interfere in a case of a mere trespass. As a general rule, it leaves the party to his legal remedy. But if there is anything special in the case — anything which renders the remedy at law impossible or incomplete — impossible, for example, when the trespasser is insolvent, or incomplete when from its nature it is impossible to prove the damage which grows out of the trespass,— chancery will put forth its restraining hand, and by a decree compel the wrong-doer to desist. The injury done to this company is not alone the destruction of their toll-gate. If that was all, the value of the gate would be the criterion of damages; and that being suscepti-

ble of proof, a court of law could give redress. If that were the case, we would dismiss this bill. The toll-gates are the authorized means by which the company collects its revenue — the means by which the stockholders are to receive the profits on their money — the means by which the grant in their charter is made available. It does not matter that there are other means by which they would be enabled to collect tolls. It is sufficient that they believe that gates are the best means for them, and that their charter authorizes their use. What then is the injury? It consists in preventing them from collecting tolls — in realizing the profits which their road may make upon the stock — in short, it defeats the privileges and immunities of their charter, and nullifies the legislative grant. How is such injury to be proven? Who will prove what will be the income of this road for a day, or a week, or a year? How could the value of the grant be sworn to by any witness? Or, how would it be possible to prove what would be the actual diminution of the tolls, occasioned by a demolition of the toll-gates, for any specified time? It could not be done. The remedy at law would be, for that reason, to say the least of it, exceedingly uncertain and incomplete." It will be perceived that the action at law for damages was held to be inadequate on account of the impossibility of estimating the amount of tolls that might be collected and the consequent loss of profits. In *Gray Lumber Co.* v. *Gaskin,* 122 *Ga.* 342, 349 (50 S. E. 164), it was said: "Inability to correctly estimate the damage after all evidence obtainable has been produced makes a case of irreparable damages, but difficulty in collecting evidence as to damage would not. 'A trespass is irreparable when, from its nature, it is impossible for a court of law to make full and complete reparation in damages.' *Justices* v. *P. R. Co.,* 11 *Ga.* 250."

In the case under consideration the measure of damages in an action at law would be so restricted as to exclude Pilgrim from the right to recover profits from his contemplated business, on account of the legal impossibility of estimating the amount of his earnings; and for similar reasons he could not recover at law for the damage to his existing business in the adjoining building, produced by the competing billiard and pool room conducted by Purcell and Sudderth in the leased space in Purcell's store. Under the circumstances, the remedy at law in an action for damages would not be the substantial equivalent of the remedy afforded

by equity in a suit for specific performance and injunction, and consequently would not be adequate within the meaning of the principle upon which injunctions are granted.

FISH, C. J., and HILL, J., concur in the foregoing views.

BECK, P. J., and GILBERT and GEORGE, JJ., are of the opinion that an interlocutory injunction was unauthorized under the pleadings and evidence. Briefly stated, the facts in the case are as follows: Purcell, who was himself a lessee, executed a lease for the remainder of his term, to D. G. Jacobs, to certain floor space in the premises for the purpose of conducting therein a billiard parlor. The lease from Purcell to Jacobs provided that the latter might sublet the space or assign the lease without the written consent of Purcell. Thereafter Jacobs transferred his lease for a valuable consideration to Pilgrim. At the time of the execution of the lease Pilgrim was operating a billiard parlor in an adjoining building. Purcell refused to admit Pilgrim into possession, and Pilgrim filed a petition in equity to enjoin Purcell (and another alleged to have been in collusion with him) from using the floor space for the purpose of conducting a billiard parlor. The judge of the superior court enjoined the defendants as prayed, and three of the Justices of the Supreme Court favor an affirmance of that judgment upon the ground that " the measure of damages in an action at law would be so restricted as to exclude Pilgrim from the right to recover profits from his contemplated business, on account of the legal impossibility of estimating the amount of his earnings; and for similar reasons he could not recover at law for the damage to his existing business in an adjoining building, produced by the billiard and pool room conducted by Purcell. [and the defendant alleged to be in collusion with him] in the leased space in Purcell's store."

Where the lessor himself refuses to allow the lessee to take possession at the commencement of the term, the lessee may, it is agreed, recover damages from the lessor. Ordinarily the measure of damages for the lessee's exclusion from the premises is the amount by which the rental value of the premises exceeds the rent to be paid. The lessee is entitled to recover the value of the leasehold estate, less the rent reserved. The lessee may also recover special damages which can be regarded as directly resulting from the lessor's breach of agreement, express or implied, to

give possession. It is generally held, however, that conjectural profits which the lessee might have made from the occupation of the premises are not recoverable. 1 Tiffany on Landlord and Tenant, 547, § 85, Jones on Landlord and Tenant, § 371. In this State it has been directly decided, in such a case, that "the measure of damages is the excess in the value of the term over the amount agreed to be paid as rent. If no excess, nominal damages only are recoverable. Anticipated profits from a business intended to be carried on by the tenant upon the premises, are not recoverable." *Kenny* v. *Collier,* 79 *Ga.* 743 (2) (8 S. E. 58). In the case cited, this court, speaking through Chief Justice Bleckley, said: " If anything is speculative, remote and contingent, it is the net income from a business never begun, upon premises never occupied, during a period of time but partially elapsed. . . The measure of damages for not admitting a lessee or tenant into possession at the beginning of the term is the excess in the value of the term over the amount stipulated as rent. This is the general rule. . . The general rule does not deny profits, but confines the recovery to profits arising from the contract itself, the measure of which is the difference between cost and value. If there be no difference, or if cost be in excess of value, nominal damages only will be recoverable. That anticipated profits from a business intended to be carried on by the plaintiff upon the premises cannot be allowed, is as well settled as anything can be in an age of legal scepticism." *Kenny* v. *Collier,* supra, was decided by a full bench of three Justices, and is binding as authority. The decision in that case can be reversed only upon review and by the concurrence of at least five Justices. It is therefore as well settled as anything can be in an age of legal uncertainty, that generally anticipated profits from a business " never begun, in premises never occupied, during a period of time but partially elapsed," are speculative, contingent, and remote. The rule is based upon the soundest principles. A rule of damages which would embrace all the consequences, however remote, contingent, or speculative, which might be shown to have resulted from a failure to perform a stipulated duty, would seriously hinder the operation of business and make ordinary commercial intercourse impossible. What damages will be considered the natural and proximate consequence of the injury, or of the

breach of duty, and what damages will be considered remote, contingent, and speculative, is one difficult of decision; but *Kenny* v. *Collier,* supra, disposes of the difficulty in the instant case. Equity follows the law. Remote, contingent, and speculative damages resulting from the breach of contract, which cannot be recovered at law because remote, contingent, and speculative, can furnish no ground for the intervention of a court of equity upon the theory that such damages, if recoverable, would be incapable of exact computation. Compare *Silver* v. *Sparta,* 107 *Ga.* 275, opinion, at bottom of page 280 (33 S. E. 31). In the instant case Purcell is not alleged to be insolvent. There is no proof of his insolvency. Having elected to breach his contract, he must suffer the legal consequences. He is solvent and able to respond. No injunction can be allowed upon the ground that the plaintiff lessee could not estimate the amount of his earnings. If he could estimate them, he could not have them.

Was the injunction authorized upon the theory that Pilgrim could not recover at law for the damage to his existing business in the adjoining building, produced by the competing billiard and pool room conducted by Purcell (and the other defendant) in the leased space in Purcell's store? Did Purcell engage to protect the business of Pilgrim? He expressly stipulated in his lease that the floor space should be used for the purpose of conducting a billiard and pool room. He did not make the lease directly to Pilgrim. At the date of the execution of the lease Pilgrim was conducting a billiard and pool room in an adjoining building. It turned out that Purcell's lessee assigned the lease to Pilgrim. Can it be said that Purcell contemplated the protection of Pilgrim's business, when, by the terms of his lease, he required the operation of a business in direct competition with Pilgrim's business? Contracts in the nature of contracts in restraint of trade are not favored; and no implied covenant binding Purcell not to engage in any particular business for the protection of one who chanced to become the owner of the lease executed by him can be read into the lease. Particularly is this true when the lease, as stated above, called for the establishment of a business to be carried on in direct competition with Pilgrim's existing business. In no view of the case, as we think, was the interlocutory injunction authorized.