## ATLANTIC COAST LINE RAILROAD COMPANY v. GUNN et al.; et vice versa.

Nos. 11818, 11838. DECEMBER 1, 1937.

*H. L. Jackson* and *Bennet & Branch,* for plaintiff in error.

*E. R. Smith* and *Corbitt & Sumner,* contra.

ATKINSON, Presiding Justice. Two individuals instituted an action to enjoin a railroad company from committing certain alleged acts of trespass on described lands of the plaintiffs. The defendant filed a demurrer to the petition as amended, and an answer. At interlocutory hearing the judge overruled the demurrer, and, after introduction of evidence, granted an injunction to preserve the status until the final trial. The defendant excepted.

1. The plaintiffs alleged that ownership of the lands was in virtue of the will of a testator and certain deeds, copies of which were set forth, and continuous actual possession thereunder by themselves and their predecessors for more than twenty years, and until the commencement of the action. The petition, which was solely for injunction, was not subject to be dismissed on the fourth ground of demurrer which complains "that said petition fails to show, by the facts alleged and the abstract of title attached to the petition, that the plaintiffs have title to the land described in the petition." Neither was it erroneous to overrule the motion to strike paragraph 14 of the amendment to the petition, seeking to extend the boundaries of the land alleged to be property of petitioners, so that the land should extend all the way to the bed of the defendant's railroad.

2. The alleged threatened trespass consisted of entry, November 28, 1936, upon described land of petitioners, without right or title, and for the purposes (1) of tearing down a described fence permanently attached to the soil, partly inclosing petitioners' cultivated field, and building a new fence through the field, and cutting off a strip of petitioners' land lying parallel with the railroad, approximately 35 feet wide and 1500 feet long; (2) tearing down two

unoccupied houses on said land; (3) cutting and removing from the eastern end of said strip of land "a thick growth of pine timber and hardwood for a distance of some 350 yards in length, . . which . . will result in irreparable injury and damage . . in that a large portion of such timber is young pine and young hardwood, now too small for commercial purposes, and for which reason it is impossible to determine the present value thereof." It was alleged that trespasses numbered 1 and 2 above were wilful, and, unless restrained, "will be a continuing trespass, from day to day, and from time to time, and . . will injure and damage your petitioners and their said freehold, and the said damage will be irreparable, because not capable of exact computation." In *Brigham* v. *Overstreet,* 128 *Ga.* 447 (6), 451 (57 S. E. 484, 10 L. R. A. (N. S.) 452, 11 Ann. Cas. 75), it was held: "In this State, when the power of a court of equity is invoked to prevent threatened injuries to realty, the old common-law distinction between waste and trespass still exists, and an injunction may issue to prevent the commission of waste, although, if committed, it may not be irreparable in damages and the party threatening to commit it may be solvent; but the rule is otherwise as to mere trespass." In the opinion this court stated the old common-law distinction between waste and trespass, referred to above, thus: "Waste is an injury to the estate by one who has not an absolute or unqualified title, but who is rightfully in possession, while trespass is an injury to the estate, or the use thereof, by one who is a stranger to the title." And again: "If there is a privity of estate between the party applying for the injunction and him who is doing or threatening to do acts injurious to the estate, such as exists between tenant for life or years and the reversioner, it is not necessary that the act should work irreparable injury in order to induce the court to grant the injunction. But if the parties are strangers in respect to the estate, or are claimants adverse to each other, the court will require evidence that the injury threatened will be irreparable, before it will interpose to restrain the acts by injunction." See also Code, § 55-104; *Nalley Land & Investment Co.* v. *Shaddix,* 172 *Ga.* 171 (157 S. E. 291). The alleged acts classified (1) and (2) above, as to tearing down the existing fence and building a new fence and to tearing down the houses, related to the question of injury to land. The defendant did not claim title or right under

the plaintiffs, but they were adverse claimants. In these circumstances the allegations charged a typical case of trespass, and did not purport to seek injunctive relief on the ground of waste. Therefore it was necessary to allege some equitable ground for injunctive relief. The allegations relied on for this purpose were that those trespasses were wilful, and unless restrained would be continuing from day to day and from time to time, and would cause damage to petitioners and their freehold which would be irreparable, because not capable of exact computation. Considering the substantial character of the threatened injury, these allegations are mere conclusions of the pleader, and do not support the proposition that the damage could not be computed. This being the only allegation upon which to base the charge that the trespass was irreparable, the charge was insufficient for the grant of injunctive relief relatively to the above acts classified as (1) and (2).

3. All that is said above will apply to the trespass numbered (3), relating to cutting and removing timber, except that it is alleged that the trespass if committed will cause irreparable damage, because a large portion of such timber is young pine and young hardwood now too small for commercial purposes, for which reason it is impossible to determine the present value thereof. In *Gray Lumber Co.* v. *Gaskin*, 122 *Ga.* 342, 349 (50 S. E. 164), it was said: "Inability to correctly estimate the damage after all evidence obtainable has been produced makes a case of irreparable damages, but difficulty in collecting evidence as to damage would not. 'A trespass is irreparable when, from its nature, it is impossible for a court of law to make full and complete reparation in damages.'" The case of *Justices of the Inferior Court of Pike County* v. *Griffin and West Point Plank Road Co.*, 11 *Ga.* 246, was cited for this proposition, where it was said by Nisbet, Judge: "It is well understood that equity will not interfere in a case of a mere trespass. As a general rule, it leaves the party to his legal remedy. But if there is anything special in the case—anything which renders the remedy at law impossible or incomplete—impossible, for example, when the trespasser is insolvent, or incomplete when from its nature it is impossible to prove the damage which grows out of the trespass,—chancery will put forth its restraining hand, and by a decree compel the wrong-doer to desist." It is said in 14 R. C. L. 344, § 46: 'A remedy at law, to exclude

appropriate relief in equity, must be complete and the substantial equivalent of the equitable relief. It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." In Western Union Telegraph Co. v. Rogers, 42 N. J. Eq. 311 (11 Atl. 13), it was said: "Again, it is urged that the complainant can not be heard in this court, because the court never exercises jurisdiction unless it appears that the damages threatened are irreparable. This, it is true, is one well-settled rule; but another is equally well settled, viz. that the party will not be driven to his legal remedy where it may appear that that remedy will prove inadequate. In this case there can be no doubt but that the complainant could at law recover; but recover what? Most likely not more than six cents, or some other merely nominal sum. Now, I think, no thoughtful person will insist that such result would be adequate." *Purcell* v. *Pilgrim*, 152 *Ga.* 61 (108 S. E. 515). Treating this young timber as too small for commercial purposes, as alleged, it is not apparent how its present value could be with reasonable accuracy ascertained; but yet if the land is property of petitioners, as alleged, they would have a right to have such timber remain as part of it and grow if they chose to marketable size, or to use it in their own way. If it is so small as to have no commercial value, the plaintiffs' remedy by action for damages after the timber has been cut and removed would not be as adequate as injunctive relief to prevent the trespass. In this view the petition alleged a cause of action for injunction to prevent the cutting of the young pine and hardwood timber. There was no error in refusing to strike paragraph 12 of the amendment to the petition, seeking injunction to prevent cutting of the timber, on the ground, as contended, that said paragraph failed to allege "such facts as would show that said damage was irreparable, but that the facts alleged plainly indicated that the alleged damage, if any, could be easily computed and determined in money."

4. On the question of irreparable damage in a suit for injunction to prevent trespass upon realty, the sworn allegations of the petition may be considered as evidence at the interlocutory hearing. *Saint Amand* v. *Lehman*, 120 *Ga.* 253 (4) (47 S. E. 949) ; *Roberts* v. *Roberts*, 180 *Ga.* 671 (3) (180 S. E. 491) ; *Spivey* v. *Pope*, 180

*Ga.* 609 (180 S. E. 118). Considering the sworn allegations in paragraph 12 of the amendment to the petition, relating to the cutting of small timber, as dealt with in the preceding division, together with the supporting affidavit of the witness Hammond stating in effect that on the east end of the strip of land in question "is growing small pine and hardwood timber," and the affidavit of the witness Bussey substantially to the same effect, the judge was authorized to grant an interlocutory injunction to preserve the status until the final trial, in so far as relates to the alleged trespass complained of in the said paragraph 12 of the amendment.

5. Treating the general demurrer as referring to the petition as amended as alleging a cause of action for injunction to prevent the cutting of small timber, the demurrer, being general only, was properly overruled. But the judgment rendered after hearing evidence was too broad, and, under the principle stated in the preceding divisions, should have been confined to the grant of injunction only as to the cutting and damaging of the timber.

6. The plaintiffs relied, in part, upon prescriptive title to the land on which the fence and houses were located, and which the defendant claimed were a part of its right of way. The prescription was in part by claim of possession of William B. Gunn as life-tenant (plaintiffs being named as tenants in remainder) under the will of John B. Gunn. During his possession William B. Gunn executed the paper set forth in the cross-bill of exceptions, and made the declarations therein set forth, both tending to show an admission by William B. Gunn that the fence and buildings encroached upon the right of way of the defendant, and that his use thereof was only permissive. *Held:*

(*a*) The evidence was competent as tending to show the character of the possession, which was a material question in the case.

(*b*) Neither the life-tenant, William B. Gunn, nor his legal representative was a party to the case. In these circumstances the witness Hargrett, agent for the defendant railroad company, was not incompetent under the Code, § 38-1603 (relating to competency of witnesses), to testify to the declarations of William B. Gunn, on the ground that he was dead.

(*c*) Nor was it erroneous to admit the testimony of Hargrett over the objection that the railroad company, having no title at the

time, could not legally grant to William B. Gunn permissive use of his own land, or over the objection "that the deeds themselves would be the highest and best proof of title, if any the railroad company had, to a 100-foot right of way south of the railroad tracks."

*Judgment on the main bill of exceptions reversed in part and affirmed in part. Judgment on the cross-bill of exceptions affirmed. All the Justices concur, except*

RUSSELL, C. J., who dissents from the ruling on the cross-bill.